IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| JAMES V. JOHNS, JR., | Civ. No. 18-00126 JMS-RLP |
| Plaintiff, | ORDER REVERSING DECISION OF ACTING COMMISSIONER OF SOCIAL SECURITY AND REMANDING ACTION FOR FURTHER PROCEEDINGS |
| vs. | |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | |
| Defendant. | |

**ORDER REVERSING DECISION OF ACTING COMMISSIONER OF SOCIAL SECURITY AND REMANDING ACTION FOR FURTHER PROCEEDINGS**

## I. INTRODUCTION

Plaintiff James Johns, Jr. ("Plaintiff" or "Johns") seeks review under

42 U.S.C. § 405(g) of Acting Commissioner of Social Security Nancy A.

Berryhill's ("the Commissioner") denial of Plaintiff's application for supplemental

security income benefits under Title XVI of the Social Security Act.

The Administrative Law Judge's ("ALJ") February 10, 2017 decision

is deficient in a key area. It fails to properly "specifically identify" and discuss

Plaintiff's pain and symptom testimony which the ALJ apparently rejected in

finding Plaintiff not disabled. *See, e.g.*, *Treichler v. Comm'r of Soc. Sec. Admin.*,

775 F.3d 1090, 1102 (9th Cir. 2014) ("[W]e require the ALJ to specifically identify

the testimony from a claimant she or he finds not credible and explain what

evidence undermines the testimony.") (citation and internal quotation marks

omitted).  Indeed, the ALJ's decision contains an apparently incomplete sentence,

and thus thoughts appear to be missing where the decision starts to discuss

Plaintiff's pain and symptom testimony.  *See* Administrative Record ("AR") at 25.[1]

The decision is incomplete — and the omission means the court cannot

meaningfully review the determination that Plaintiff is disabled.  *See, e.g.*, *Brown-*

*Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (explaining that the ALJ must

specifically identify testimony to assure the ALJ "rejected the claimant's testimony

on permissible grounds and did not arbitrarily discredit a claimant's testimony

regarding pain").  For this reason, as explained in more detail to follow, the court

REVERSES the ALJ's February 10, 2017 Decision and REMANDS the action to

the ALJ.[2]

## II.  BACKGROUND

Plaintiff was born in August 1987, and was 29-years old when the

ALJ issued her February 10, 2017 decision.  *See, e.g.*, AR at 97.  Plaintiff twice

---

[1]  The AR is numbered sequentially from pages 1 to 970, and is available at ECF Nos. 12-1 to 12-10.

[2]  Under Local Rule 7.2(d), the matter is suitable for decision without an oral hearing. *See* ECF No. 18.

previously applied for disability and supplemental security income benefits under Titles II and XIV of the Social Security Act, alleging a disability onset date of May 1, 2005.  *Id.* at 16.  His August 2006 and May 2010 applications were denied in 2007 and 2011 respectively.  *Id.* at 15.  Although those applications were denied, some of the medical information from those prior years is relevant, and was discussed by the ALJ in the current proceeding.  The parties agree, however, that the current action is limited to a July 16, 2014 application under Title XIV, seeking supplemental security income benefits beginning on that date.  *See* Pl.'s Opening Br. at 1, ECF No. 14 at 5; Def.'s Answering Br. at 1-2, ECF No. 15 at 7-8.

The Social Security Administration disapproved Plaintiff's July 16, 2014 application on February 12, 2015, AR at 143, and denied reconsideration on June 1, 2015, AR at 154.  On July 19, 2016, an ALJ held a hearing in Hilo, Hawaii, on Plaintiff's challenge to that denial.  *See* AR at 38 to 90.  After the ALJ's February 10, 2017 decision, and after the Appeals Council denied review on February 1, 2018, Plaintiff filed this action on April 2, 2018, seeking judicial review.  ECF No. 1.

This court's decision ultimately turns on a relatively narrow issue regarding the ALJ's consideration of Plaintiff's testimony.  The court thus does not set forth all the administrative record's details of Plaintiff's medical history, which dates back to at least 2005.  The ALJ, however, found that Plaintiff "has the

following severe impairment[s]:  obesity; lumbar spine degenerative disc disease, status post left laminectomy and discectomy in February 2011; intermittent explosive disorder[;] and . . . adjustment disorder."  AR at 18.

Specifically, the ALJ found that, "from the May 1, 2005 alleged onset date of disability through [February 10, 2017], the claimant has . . . limitations in the current four broad areas of mental functioning . . . [and that] the claimant's mental impairments are severe pursuant to [20 C.F.R. § 404.1520a and 20 C.F.R. § 416.920a]."  *Id.* at 21.  But, although diagnoses in the record reflected a substance addiction disorder, she found his drug and alcohol abuse was "not severe."  *Id.*  As for physical impairments, she concluded that Plaintiff has "severe physical impairments as of October 2010."  *Id.* at 22.  Based on (1) an October 5, 2010 magnetic resonance image; (2) February 2011 laminectomy and discectomy surgery; (3) August and November 2014 progress notes; and (4) May 2015 electrodiagnostic testing, she found that Plaintiff "has had a severe lumbar spine impairment through [February 10, 2017.]"  *Id.*  She also found he was clinically obese at a severe level, although his carpal tunnel syndrome was not severe.  *Id.*[3]

---

[3]  In her Opposition, the Commissioner "stipulate[d] that the ALJ fairly and accurately summarized the material medical and non-medical evidence of record."  Answering Br. at 4, ECF No. 15 at 10.

Given those classifications, the ALJ then assessed Plaintiff's residual

functional capacity ("RFC"), as follows:

> [Plaintiff] can lift and/or carry 20 pounds occasionally
> and 10 pounds frequently, he can sit 6 hours out of an 8-
> hour day, and he can stand and/or walk 6 hours out of an
> 8-hour day (i.e., light exertional-level work as defined in
> 20 CFR 404.1567(b), 20 CFR 416.967(b), and SSR 83-
> 10)); he can occasionally stoop, kneel, crawl, and crouch;
> he can occasionally climb ramps and stairs (but he can
> never climb ladders, ropes, or scaffolds); he can
> understand, remember, and carry out simple
> instructions (defined as unskilled Specific Vocational
> Preparation ("SVP") 1 and 2 work); he can maintain
> attention, persistence, and pace without restriction; he
> can respond appropriately to co-workers and supervisors,
> and; he can frequently interact with the general public
> (20 CFR 404.1520(e); 20 CFR 416.920(e)).

AR at 24.

Considering that RFC and other relevant factors — Plaintiff's age

("younger individual age 18-49"), education (11th grade), and work experience (no

substantial gainful activity during the past 15 years), *id.* at 28 — the ALJ then

assessed whether Plaintiff could perform jobs that exist in significant numbers in

the national economy. After considering testimony of a vocational expert ("VE"),

the ALJ determined that Plaintiff could perform "the requirements of

representative occupations" such as a cashier, sales attendant, and a cafeteria

attendant. *Id.* at 28-29.

Alternatively, the ALJ considered VE testimony that found Plaintiff could perform a significant numbers of jobs even assuming Plaintiff had further limitations. Specifically, the ALJ gave the VE the following hypothetical:

> [A]ssume an individual of the same age, education and vocational background as the claimant with the limitations identified [previously], with the following changes: that such an individual would need to alternate positions between sitting and standing at 45-minute intervals for one to five minutes at the workstation.

*Id.* at 85. The VE asked "during that one to five minutes at a time, is the person on-task or off-task?" and the ALJ clarified that "[t]hey are on-task because they're at the workstation." *Id.* at 86. The VE then indicated that such a person could perform certain types of cashier jobs, or be a ticket seller or document preparer. *Id.* at 86-87. The ALJ accepted that opinion, and found Plaintiff is "not disabled" for purposes of the Social Security Act. *Id.* at 29.

During the hearing, the ALJ had also asked the VE to assume an individual with Plaintiff's specific limitations "were off-task for five percent of the workday due to distractions from psychologically-based symptoms." *Id.* at 87. The VE testified that "[a]t five percent . . . employment still could be maintained." *Id.* Plaintiff's counsel then asked the VE — combining all aspects of the previous hypotheticals — whether a person would still be able to work if they "were off-task more than 20 percent of the time." *Id.* The VE testified that 20 percent

"would preclude employment; that's too much time off-task." *Id.* at 88-89. She explained that such a limitation would preclude "all employment." *Id.* at 89.

Accepting that latter opinion by the VE, it would ultimately be dispositive if Plaintiff in fact has such a limitation (i.e., being "off-task" more than 20 percent of the time). It thus becomes important for this review whether the ALJ specifically considered (and properly rejected) Plaintiff's pain and symptom testimony as it relates to the amount of time he is "off task." And Plaintiff contends that his pain and symptom testimony did indeed establish such a relationship, and that the court should remand for such consideration. The court's analysis focuses on that question.

## III. <u>STANDARD OF REVIEW</u>

A claimant is "disabled" for purposes of the Social Security Act if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see* 42 U.S.C. § 1382c(a)(3)(A); *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

A district court affirms a Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence on the record as a whole. *See* 42 U.S.C. § 405(g); *Andrews v. Shalala*, 53 F.3d 1035,

1039 (9th Cir. 1995).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Tylitzki v. Shalala*, 999 F.2d 1411, 1413 (9th Cir. 1993).

## IV.  <u>ANALYSIS</u>

**A.    Legal Standards**

***1.    Disability Determinations***

Social Security Administration regulations establish the analysis to determine when a person is "disabled" under the Social Security Act, 20 C.F.R. § 404.1520; 42 U.S.C. § 423.  A familiar five-step sequential evaluation process applies:

> (1) Has the claimant been engaged in substantial gainful activity?  If so, the claimant is not disabled.  If not, proceed to step two.
>
> (2) Has the claimant's alleged impairment been sufficiently severe to limit his ability to work?  If not, the claimant is not disabled.  If so, proceed to step three.
>
> (3) Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1?  If so, the claimant is disabled.  If not, proceed to step four.
>
> (4) Does the claimant possess the residual functional capacity to perform his past relevant work?  If so, the claimant is not disabled.  If not, proceed to step five.

> (5) Does the claimant's residual functional capacity, when considered with the claimant's age, education, and work experience, allow him to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

*See, e.g.*, *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006)

(citing 20 C.F.R. § 404.1520).

The claimant has the burden of proof at steps one through four; the Commissioner has the burden at step five. *See, e.g.*, *Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001). At steps four and five, the ALJ may consider testimony from an impartial VE to determine whether an applicant can perform his or her past work, or to determine whether he or she can perform other jobs in the national economy. *See, e.g.*, *Wagner v. Astrue*, 499 F.3d 842, 854 (8th Cir. 2007) ("[T]he ALJ may rely on the testimony of a vocational expert in making the necessary findings at step four") (citations omitted); *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995) ("The [Commissioner] can meet this burden [at step five] by propounding to a vocational expert a hypothetical that reflects all the claimant's limitations.").

## 2. *Evaluating Subjective Symptom and Pain Testimony*

Courts "leave it to the ALJ to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record." *Brown-Hunter*, 806 F.3d

at 492 (quoting *Treichler*, 775 F.3d at 1098). "The ALJ must make two findings before the ALJ can find a claimant's pain or symptom testimony not credible." *Treichler*, 775 F.3d at 1102 (citing 42 U.S.C. § 423(d)(5)(A)).

"First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)).

"Second, if the claimant has produced that evidence, and the ALJ has not determined that the claimant is malingering, the ALJ must provide 'specific, clear and convincing reasons for' rejecting the claimant's testimony regarding the severity of the claimant's symptoms." *Treichler*, 775 F.3d at 1102 (quoting *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)). "This is not an easy requirement to meet: The clear and convincing standard is the most demanding required in Social Security cases." *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017) (quoting *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014)).

Further, "an ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her residual functional capacity determination." *Brown-Hunter*, 80 F.3d at 489. "To ensure that [a court's] review of the ALJ's

credibility determination is meaningful, and that the claimant's testimony is not rejected arbitrarily, [courts] require the ALJ to specify which testimony she finds not credible, and then provide clear and convincing reasons, supported by evidence in the record, to support that credibility determination." *Id.* "[T]he ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.* at 493 (quoting *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)); *see also, e.g.*, *Treichler*, 775 F.3d at 1102 ("[W]e require the ALJ to 'specifically identify the testimony from a claimant she or he finds not to be credible . . . .'") (quoting *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001) (internal editorial marks omitted)). The requirement enables a court to assess whether the ALJ "rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain." *Brown-Hunter*, 806 F.3d at 493 (quoting *Bunnell*, 947 F.2d at 345-46).

## B.     Application of Legal Standards

Both sides agree with the ALJ's analysis at the first four steps of the analysis. First, Plaintiff has not been engaged in "substantial gainful activity." AR at 18. Second, he has impairments, both mental and physical, that are sufficiently severe to limit his ability to work. *Id.* at 18-22. Third, his combination of impairments does not meet or equal those "listed in 20 C.F.R. Part 404, Subpart P,

Appendix 1." *Id.* at 22-24. And because Plaintiff has no "past relevant work," step four does not apply.

Rather, the dispute concerns only step five — whether Plaintiff can adjust to work that exists in significant numbers in the national economy, considering Plaintiff's RFC, along with his age, education, and experience. More specifically, as explained above, the question is whether the ALJ properly considered and explained her reasons for rejecting Plaintiff's subjective pain and symptom testimony as it relates to the ALJ's determination of Plaintiff's RFC and the amount of time he can be "on task."

### 1. *Plaintiff's testimony of disabling pain and symptoms*

Plaintiff points to evidence and his extensive testimony in the record regarding his ability to sit, stand, and walk in an eight-hour day. For example, he cites a February 2015 assessment from Dr. Daniel Belcher that — although it opined that Plaintiff should be able to do light to sedentary activity — recognized that Plaintiff could only "walk two or three blocks, sit for half-an-hour, stand for 15 to 20 minutes, [and] lift 20 pounds." *Id.* at 807.

Thus, although the administrative hearing covered several areas, the court focuses on Plaintiff's testimony regarding his alleged inability to sit or stand or "remain on task" for significant periods of time. At the hearing, Plaintiff was asked about how long he uses a computer and plays video games, and he answered

"Not very long.  Sometimes an hour, because I got to keep standing up and sitting down, so I do get frustrated."  *Id.* at 53.  When the ALJ asked about specific problems that prevent him from working, he testified as follows:

A.	I have a difficulty sitting for a very long time.  If I try to cope with it, you know, I end up sweating real hard because I'm trying to push through the pain.  I need to stand up a lot and as standing up, I — sometimes I need to pace and everything so I can take my mind off the pain.  And then I got to sit a lot, so I'm roughly having trouble with standing a lot, sitting a lot.

Q.	How long are you able to sit at one time before you feel like you have to —

A.	Roughly a half hour.
. . . .
Q.	And so you can sit for about a half hour and then what do you need to do?

A.	Then I need to stand.  And depending on how — if the pain is throbbing or if it's just a sharp one at the moment, if it's throbbing, I've got to pace.  I have to pace to take my mind off it.

Q.	For how long?

A.	Roughly five or 10 minutes, depending on how it is.

Q.	Just standing up and changing position, will that help relieve the pain?

A.	Yes.  If I shuffle, depending on which side hurts, mostly it's my left side, so I try to lean to the right or sometimes even just putting pressure on the side that hurts relieves it.

Q. Well, how far are you able to walk at one time?

A. I'd say not 100 percent sure, probably about 1,000 feet, 1,500.

*Id.* at 55-56. Later, the following exchange occurred regarding Plaintiff's ability to ride the bus:

Q. [ALJ]: And by the way, how did you get to the hearing today?

A. I took the bus in the morning. . . .

Q. Okay. And how long did it take you to get here?

A. Roughly a couple hours.

Q. Did you experience any difficulty on the ride here?

A. I always do; I have to stand up on the bus.

*Id.* at 61.

Q. [Counsel] Okay. . . . You talked about the bus trip. Describe that a little more in detail for me? On a two-hour bus trip like from this morning, how many times did you — you sit someplace in the bus so you can stand up?

A. They got two different kinds of busses: they got a bigger bus that has — in the front they have seats that go sideways, and then they start going in [a] row. Normally, I sit in the front seat there because then I can just stand straight up. Normally the bus driver understands, so I can just stand up and then sit back down in place.

If they use the older busses, they don't have seats that go sideways, they're all just rowed in, but in the middle of the row in the back, in the aisle, they have a

middle seat, so normally I try to sit there to where it doesn't look inconspicuous to where I got to stand up all the time. Because sometimes people, they try to get me to sit in the window seat but I tell them I cannot because I got to stand up. So I'll try to take an aisle seat and I'll either lift or rest and step out, stand and then step back in.

Q.   Now, we've been here this morning about 30 to 35 minutes and you've stood up twice, is that correct?

A.   Yes.

Q.   Okay, so in the course of a bus trip, how many times do you stand up and sit down in your two-hour trip?

A.   Roughly six or seven times, depending on how fast I had to walk. If I got there — if I could just take leisure time, normally I try to get to the bus stop between 15 and 20 minutes early because then I can just sit that whole time and I won't have to stand up on the bus right away.

Q.   So six or seven times on a two-hour bus trip is not unusual.

A.   No.

Q.   Okay. And that's every bus trip?

A.   Yes.

*Id.* at 64-65. Plaintiff testified similarly regarding activity at night:

Q.   [Counsel]  Do you have to get up during the night because of your back?

A.   Yes.

Q.   How many times do you have to get up during the night?

15

A.  On a good night, probably two times.

Q.  Okay.  What do you have to do when you get up?

A.  Depending, I either try to sit on the — pull my legs out, sit on the side of the bed or I have to get up and pace or I normally try to walk to get something to drink and then come back.  And I got a fold out chair I sit in because then I can sit straight up and down.

Q.  So how long does this activity take before you can go back to sleep? 10 minutes, 20 minutes?

A.  Roughly a half hour.

Q.  Okay.  So twice a night you wake up and you have to take at least a half an hour out of bed to stop the pain or reduce the pain so you can go back to sleep?

A.  Yes.

*Id.* at 68-69.  Similarly, he testified as follows about when he reads:

Q. [ALJ] . . . How long are you able to read at one time before you have to get up and, you know, are you walking around with the book? . . .

A.  Normally — well, I can't — I don't read very fast, so I would say maybe two or three pages, and then I have to get up and move and do something.  That's why I don't, like, even with video games, I can't focus very long because even if I sit, I got to get up, and getting up interrupts the motion that I'm in.  I got to see from a different height.  Like, even the same with reading: sometimes I — I even try to walk when I read, but I do wear reading glasses, which kind of — my vision, I can't see with them far away, so there's that issue.  But I do try to read, but I do have to get up.

*Id.* at 82.

### 2. The ALJ's Insufficient Apparent Rejection of Plaintiff's Testimony

Although it is not clear, the ALJ apparently rejected this symptom and pain testimony in the February 10, 2017 decision. In this regard, page 11 of the decision provides:

> The claimant stated that he [sic] pain with extended walking, his back pain made it difficult to sit or stand and walk, he required 2-3 hour naps, and his mental problems did not allow him to cope in a normal work environment, and he did not handle stress or changes in routine well (Exhibits 6E; 7E; 11E; 16E; 23E). *The claimant testified that it was hard to sit long, he could only walk half a block without resting, he had a back brace and used a transcutaneous electrical nerve stimulation unit for back pain relief,*

*Id.* at 24-25 (emphasis added). The emphasized clause ends with a comma — it is an apparently incomplete sentence and unfinished thought. There is no other mention of Plaintiff's symptom testimony regarding the ability, or lack thereof, to "remain on task" in the decision (other than a reference to riding the bus taken out of context as explained to follow). The decision does not mention his testimony indicating that his need to change positions affects his ability to focus and remain on task. *See, e.g.*, *id.* at 55 ("I need to stand up a lot and as standing up, I — sometimes I need to pace and everything so I can take my mind off the pain."); *id.* at 56 ("And depending on how — if the pain is throbbing or if it's just a sharp one

at the moment, if it's throbbing, I've got to pace.  I have to pace to take my mind off it."); *id.* at 82 ("I don't read very fast, I would say maybe two or three pages, and then I have to get up and move and do something.  That's why I don't, like, even with video games, I can't focus very long because even if I sit, I got to get up, and getting up interrupts the motion that I'm in.").

The ALJ nevertheless explains why she believes that Plaintiff's functional limitations are "not as significant as alleged," and "his activities of daily living are not consistent with his allegations of disabling pain and symptoms . . . ," *id.* at 25, as follows:

> The claimant also stated that he loved to read (Exhibit 16E/3), however, which indicates that his mental functional limitations are not as significant as alleged, and he can perform simple, repetitive tasks. . . .  The claimant and his stepmother also stated that he had no problems performing personal care activities, he could sweep and wash dishes, he could go grocery shopping, he usually did not have difficulty finishing housework, he could make quick and easy meals, and he could shop in stores (Exhibits 6E; 7E; 1 lE; 16E; 23E).  The claimant testified that he fixed meals and could shower without assistance, his personal hygiene was okay, he could [sic] for groceries once a month, he could sweep and vacuum as well as do dishes, he could take care of laundry, he could read long books, *he could travel 23 miles for 1 to 2 hours on the bus to go to class, and he also rode the bus to the hearing, and stood on the bus several times.*  The claimant does not have to be utterly incapacitated in order to be disabled, but his activities of daily living are not consistent with his allegations of disabling pain and symptoms, and they do not justify additional

functional limitations beyond those adopted above.

*Id.* (emphasis added).

Given those parts of the ALJ's decision, the court must remand the matter to the ALJ for two reasons. First, the incomplete sentence (or paragraph) and incomplete thought provides very little basis for the court to know whether the ALJ even considered what Plaintiff asserts is dispositive testimony — testimony about his inability to remain on task.[4] And it is potentially consequential testimony: if the ALJ had found Plaintiff unable to remain on task for 20 percent of a work day — as the VE testified — then he would have been unemployable. *See* AR at 88-89; *Popa v. Berryhill*, 872 F.3d 901, 908 (9th Cir. 2017) (accepting VE testimony that "'if the person is off task six minutes out of every hour,' she could not perform work that exists in significant numbers in the national economy because the person 'would not be competitively employable.'").[5]

The ALJ might have discredited his pain and symptom testimony because she thought he was exaggerating symptoms, or found that the testimony

---

[4] And even if the ALJ simply intended to end the sentence with a period, the analysis would still be insufficient to meet legal standards.

[5] The court thus disagrees with the Commissioner's argument that any error was harmless. *See Brown-Hunter*, 806 F.3d at 494 ("An error is harmless only if it is inconsequential to the ultimate nondisability determination, or if despite the legal error, the agency's path may reasonably be discerned.") (citations and quotation marks omitted).

did not establish that he would be off task for a necessary amount of time, or concluded that the testimony was unrelated to his ability to focus. But because the ALJ did not even mention the testimony (or, at best, only partially mentioned it) the court must speculate. That is, the ALJ failed to "specifically identify the testimony" she discredited. *See Brown-Hunter*, 806 F.3d at 493 ("'General findings are insufficient; rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints.'") (quoting *Reddick*, 157 F.3d at 722). "A finding that a claimant's testimony is not credible 'must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain.'" *Id.* (quoting *Bunnell*, 947 F.2d at 345-46).[6] And the court cannot speculate. *Treichler*, 775 F.3d at 1103 (reiterating that "we cannot . . . speculate as to the grounds for the ALJ's conclusions") (citation omitted).

Second, the emphasized clause from the ALJ's reasoning regarding Plaintiff's bus trips ("*he could travel 23 miles for 1 to 2 hours on the bus to go to*

---

[6] The parties do not otherwise dispute either step of the two-step framework to evaluate Plaintiff's pain and symptom testimony. *See, e.g.*, *Treichle*r, 775 F.3d at 1102. That is, Plaintiff "has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or symptoms alleged." *Lingenfelter*, 504 F.3d at 1036 (citation and quotation marks omitted). And "the ALJ has not determined that the claimant is malingering." *Treichler*, 775 F.3d at 1102. Thus, "the ALJ must provide 'specific, clear and convincing reasons for' rejecting the claimant's testimony . . . ." *Id.*

*class, and he also rode the bus to the hearing, and stood on the bus several times*,"
AR at 25) is confusing and appears to be taken out of context. The ALJ cites
Plaintiff's bus riding as if it helps prove that he was *not* disabled; but the extensive
testimony completely *supports* his claim as he explained his difficulties when
riding and how he must alternate between sitting and standing six or seven times
on his normal trip. In short, the court is not confident that the ALJ properly
considered this specific testimony, especially where the Commissioner has the
burden at step five, and must provide "clear and convincing" reasons for rejecting
Plaintiff's pain and symptom testimony. *See, e.g.*, *Trevizo*, 871 F.3d at 678.

The ALJ might be able to properly explain her reasons for rejecting
Plaintiff's testimony. Indeed, she might have intended to do so where the decision
is apparently missing thoughts or explanation, i.e., after the incomplete sentence on
page 11 of the decision. *See* AR at 25. And if so, Plaintiff might in fact not be
"disabled" for purposes of social security benefits. But, again, the court cannot
speculate; instead, the court must remand. *See, e.g.*, *Brown-Hunter*, 806 F.3d at
495 ("'[W]e cannot substitute our conclusions for the ALJ's or speculate as to the
grounds for the ALJ's conclusions.'") (quoting *Treichler*, 775 F.3d at 1103);
*Bunnell*, 947 F.2d at 346 ("As we have previously recognized, a reviewing court
should not be forced to speculate as to the grounds for an adjudicator's rejection of
a claimant's allegations of disabling pain.") (citation omitted).

# V. **CONCLUSION**

For the foregoing reasons, the court REVERSES the ALJ's February

10, 2017 decision and REMANDS the action to the ALJ. The clerk of court shall

close the case file.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, April 2, 2019.



/s/ J. Michael Seabright
J. Michael Seabright
Chief United States District Judge

*Johns v. Berryhill*, Civ. No. 18-00126 JMS-RLP, Order Reversing Decision of Acting
Commissioner of Social Security and Remanding Action for Further Proceedings